# Commonwealth *v.* Swartz, Appellant.

*Evidence—Photograph—Identification.*

1. In a criminal case where the issue turns upon the impersonation of one person by another, a photograph of the person alleged to have been impersonated may be identified by the wife of such person, who was present when the latter received the photograph as coming from the photographer. In such a case identification by the photographer is not necessary. The testimony of any one familiar with the original and with the photograph and a correct likeness of the original, is competent to prove such a likeness.

*Criminal law—Evidence—Self-crimination—Waiver of constitutional privilege—Letter.*

2. Where a prisoner in a criminal prosecution voluntarily goes upon the stand and testifies as to matters of defense, he waives his constitutional privilege of keeping silence, and he may be cross-examined in the same manner as any other witness. If he produces a letter and reads only one of two signatures appended to it, and he is directed by the court to hand the letter to the district attorney, and the existence of the second signature then appears, the court cannot be convicted of error in directing the production of the letter, although the existence of the second name was a fact strongly incriminating the prisoner.

*Appeals—Assignment of error—Two distinct subjects.*

3. An assignment of error embracing two distinct subjects will be disregarded.

Argued May 13, 1909. Appeal, No. 43, Oct. T., 1909, by defendant, from judgment of Q. S. Lehigh Co., June Sessions, 1908, No. 23, on verdict of guilty in case of Commonwealth v. A. E. Swartz. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for conspiracy. Before TREXLER, P. J.

At the trial it appeared that A. E. Swartz, the defendant, had been surety for one Elmer Frey, or Elmer Freeman. There was evidence that Swartz had employed one William Lawson by payments of money to impersonate and take Frey's place at the trial, and that Frey impersonating Lawson was convicted and served a term of imprisonment. Other facts appear by the opinion of the Superior Court.

Verdict of guilty, upon which the prisoner was sentenced to pay $500, and undergo an imprisonment for one year.

*Errors assigned* were in the following form:

1. The court erred in overruling the objection, by the defendant, to the offer of the district attorney for the commonwealth of the photograph as follows, to wit:

Mr. Gernerd: I ask that this photograph be offered in evidence.

The Court: It will be received for the present, but won't go to the jury yet.

Mr. Dewalt: The defense objects.

The Court: The defense objects to the admission of the photograph, the objection is overruled; and for them a bill is sealed.

2. The court erred in overruling the objection to the question put to Jonathan Frederick, a witness for the commonwealth, as follows, to wit:

"Q. Who is that individual (showing photograph to witness)? A. Well, he looks to me—"

Mr. Dewalt: We object to this as incompetent and irrelevant.

The Court: Objection overruled, bill sealed for the defendant.

"Q. Who is that? A. He resembles the Elmer Fry, alias Elmer Freeman, who was tried in this court for perjury."

3. The court erred in overruling the objection to the questions put to A. E. Swartz, the defendant, by the district attorney on cross-examination as follows, to wit:

"Q. Did he make any request of you for money, Mr. Swartz, after he went back to Wilkes-Barre?"

Mr. Dewalt: This is objected to as not cross-examination.

The Court: Objection overruled; bill sealed for the defendant.

"Q. April the 18th, he sent a letter for money; prior to that time, Mr. Swartz, did you receive any mail from him? A. No, sir."

4. The court erred in overruling the defendant's objection to the questions to A. E. Swartz, defendant, on cross-examination by the district attorney, and in requiring the production of a letter in the hands of the defendant as follows, to wit:

"Q. Well, you say you received letters from him? A. I received one from Boswell. Q. What does that letter say? "

Mr. Dewalt: This is objected to.

The Court: The objection is sustained for the reason that if the defendant has the letter in his possession the commonwealth can have it.

Mr. Dewalt: You will not surrender any documents in your possession until you are advised to do so by your counsel.

The Court: The defendant says he has the letter in his possession; the court advised him to give the letter to the attorney of the commonwealth. To this advice of the court the defendant's attorney excepts, and for him a bill is sealed.

The letter was then given to the district attorney who read it to the witness.

5. The court erred in overruling the motion of the defendant to strike from the record certain testimony as follows, to wit:

Mr. Dewalt: Counsel for defendant moves at this time that all testimony in regard to a letter alleged to have been sent from Lawson to Swartz be stricken from the record as incompetent and irrelevant, as there is no proof in the commonwealth's case, the commonwealth not having shown that there was any response to that letter from Swartz, nor any act in consequence of such correspondence.

The Court: Swartz was interrogated about the registered letter received and gave his explanation of the same, and the matter was presented without objection at the time. The objection is overruled, bill sealed for the defendant.

6. The court erred in admitting in evidence the alleged photograph of Elmer Fry; and the letter of April 18, 1908, given by the defendant under the advice of the court.

*A. G. Dewalt,* with him *Jacob S. Dillinger* and *John L. Schwartz,* for appellant.—Photographs of persons and of handwriting are in the nature of secondary evidence, and should not be admitted in evidence in the absence of proof that the original cannot be produced: Udderzook v. Com., 76 Pa. 340; Beardslee v. Columbia Twp., 188 Pa. 496.

Declarations by some of the alleged conspirators after the ob-

ject of the combination has been attained, or it has been dissolved, as to what was agreed, or what was done, could affect them only and not their alleged co-conspirators: Heine v. Com., 91 Pa. 145; Wagner v. Haak, 170 Pa. 495; Miller v. Harvey, 215 Pa. 103.

The appellant further contends that the court committed error in requiring the defendant, whilst on cross-examination, to deliver to the district attorney the letter of April 18, 1908: Patterson v. Wyoming Dist. Council, 31 Pa. Superior Ct. 112; Horstman v. Kaufman, 97 Pa. 147.

*Fred B. Gernerd,* district attorney, for appellee.—The following Pennsylvania decisions which appear to embrace the law upon this phase of evidence, do not make it imperative that the photographer should verify the photograph before its reception as evidence: Udderzook v. Com., 76 Pa. 340; Com. v. Connors, 156 Pa. 147; Beardslee v. Columbia Township, 186 Pa. 496; Com. v. Keller, 191 Pa. 122; Buck v. McKeesport, 223 Pa. 211.

The cross-examination conducted by appellee concerning the letter dated April 18, 1908, and the registered letter receipt was not improper: Com. v. Stanley, 19 Pa. Superior Ct. 58; Com. v. Kay, 14 Pa. Superior Ct. 376.

Having waived his constitutional privilege to keep silent, the prisoner cannot give testimony which makes in his favor, and then object to legitimate cross-examination, upon the ground that his answers will tend to criminate him: Com. v. House, 6 Pa. Superior Ct. 92; State v. Witham, 72 Me. 531; State v. Thomas, 98 N. C. 599; Connors v. People, 50 N. Y. 240; Com. v. Nichols, 114 Mass. 285; Com. v. Tolliver, 119 Mass. 312; see also 9 Cr. L. Magazine, 306; State v. Ober, 52 N. H. 459.

OPINION BY BEAVER, J., July 14, 1909:

The defendant was indicted for conspiracy with one William Lawson, to personate Elmer Frey, alias Elmer Freeman, who had been convicted of perjury in the court of quarter sessions of Lehigh county, in order that the said Lawson might "receive, serve and comply with whatever sentence said court might im-

pose upon the said Elmer Frey, alias Elmer Freeman, whose person said William Lawson was then and there to falsely represent and personate," etc.

In the course of the trial a photograph of Elmer Frey, alias Elmer Freeman, was offered in evidence. The first and second assignments of error relate to the offer of this photograph, although at the time it does not seem to have been received unconditionally by the court, the remark being made, "It will be received for the present but won't go to the jury yet," this qualification being made presumably for the reason that it had not at that time been identified to the satisfaction of the court. The objection, as argued by the appellant, is that it had not been, and was not during the trial, properly identified, in that the testimony of the photographer who took it was not taken, in order to identify it. This, however, we take it is not necessary. The identification was by the wife of Elmer Frey, who knew him intimately and was present when he received the photograph, as coming from the photographer, and was not only familiar with the original but with the picture as well. She was perfectly competent to make the identification.

Photographs are recognized in Udderzook v. Com., 76 Pa. 340, as an established means of producing a correct likeness, Mr. Chief Justice AGNEW, who delivered the opinion, saying: "It is evident that the competency of the evidence in such a case depends on the reliability of the photograph as a work of art, and this in the case before us, in which no proof was made by experts of this reliability, must depend upon the judicial cognizance we may take of photographs as an established means of producing a correct likeness." The testimony of anyone familiar with the original and with the photograph as a correct likeness of the original is undoubtedly competent to prove such a likeness. This is shown in Com. v. Keller, 191 Pa. 122, in which it was held: "On the trial of an indictment for murder a full length photograph of the deceased is admissible to rebut testimony that the prisoner was a smaller man than the deceased, where the witness, who identifies the photograph and testifies to its accuracy, is represented in it, standing by the side of the deceased."

So in Com. v. Connors, 156 Pa. 147: "On the trial of one of the several defendants indicted for the larceny of money from a bank, it is proper to admit in evidence the photograph of one of the other defendants, when properly identified by a witness who had seen the original, to prove the fact, in connection with other testimony, that defendants stole the money while the original of the photograph occupied the attention of the bank officer."

This general question is discussed in 17 Cyc. 414, based upon the Pennsylvania cases already cited and many from other jurisdictions: "Photographs and pictures, it is said, stand on the same footing as diagrams, maps, plans, etc., and, as a general rule, whenever it is relevant or important to describe a person, place or thing, in either a civil or criminal case, photographs or pictures are admissible for the purpose of explaining and applying the evidence in a cause and assisting the court or jury in understanding the case. This kind of evidence has sometimes been referred to as secondary evidence, and sometimes as demonstrative evidence. The photographs must be shown by extrinsic evidence to be true and faithful representations of the place or subject as it existed at the time involved in the controversy. The photograph, however, need not be verified by the oath of the photographer taking it; the foundation for its introduction may be laid by anyone who testifies to its correctness as a representation or likeness."

The identification was clearly sufficient and, in our opinion, the evidence was properly received.

The appellant argues that "the third, fourth, fifth and sixth assignments of error raise two important questions in the administration of criminal justice. The appellant complains that the court permitted proofs of acts done and declarations made by William Lawson, the coconspirator, to go in evidence, although such acts were done and the declarations were made by William Lawson, the alleged coconspirator, subsequent to the completion and consummation of the alleged conspiracy. The conspiracy had been fully consummated, according to the theory of the commonwealth, and the allegations of the first count of the indictment on which the defendant was convicted

upon William Lawson's completion of the prison sentence of Elmer Frey. The court permitted evidence, subsequent to that time, to be given of the fact of the sending of a registered letter by William Lawson to the defendant; and also the sending of a letter by William Lawson to the defendant, in which he, William Lawson, demanded from the defendant, the payment of money as the share that was due him in the furtherance of the said former alleged conspiracy. That such testimony was improperly admitted and afterwards illegally submitted to the jury, as evidence, is decided by numerous authorities. It is contrary to the enunciated doctrine of eminent writers of textbooks and the uniform decisions of the judges of this and other states."

The principle for which the defendant contends is founded in reason and sustained by abundant authority, but his difficulty is that his assignments of error do not raise this question. The testimony, of the admission of which he complains, was offered by himself, not for the purpose of establishing the conspiracy, of course, but for the purpose of breaking down the testimony of the coconspirator, who was the witness of the commonwealth, and destroying his credibility, and it was only in response to the introduction of his own testimony, for the purpose of sustaining the credibility of Lawson, the commonwealth's witness and the coconspirator of the defendant, that the testimony of which he complains was admitted. He not only has himself to blame for the admission of the testimony, but the use of the letter to which he refers when introduced was unfair, in that it called the attention of the defendant to but a single signature instead of the two which were attached to it, being the real name of the witness Lawson and also the name of the criminal whom he impersonated, in order to receive his sentence and serve the imprisonment which was a part of the sentence. Nowhere in the record is there any intimation that there was any offer of testimony subsequent to the carrying out of the terms of the conspiracy to establish the fact, and a careful reading of the testimony furnishes abundant evidence of the fact that the defendant himself laid the groundwork for all that he complains of in his third, fourth and fifth assignments of error.

The appellant also contends that his constitutional privilege, in regard to giving evidence against himself, was invaded, because the court directed him to hand the letter of April 18, 1908, to the commonwealth's counsel, and he was interrogated in regard thereto after the letter was read to him by the district attorney. The defendant went upon the stand voluntarily and in his examination he was shown the letter by his attorney and asked in regard to the signature thereto. This was important, in view of the cross-examination of the commonwealth's witness Lawson, and the counsel for the commonwealth was necessarily concerned in regard to the signature. When request was made for the letter, which it is said the defendant held in his hands, he was directed by his counsel not to hand it over, without his direction. The court advised him, however, to hand it to the district attorney, which he did. The wisdom and importance of this was immediately apparent, for the letter was signed William Lawson and below, at a different place, Elmer Freeman Frey. The examination of the district attorney was strictly cross-examination as to a subject concerning which the defendant had been examined by his attorney. As we said in Com. v. House, 6 Pa. Superior Ct. 92 (at p. 107): "A defendant in a criminal case cannot be compelled to testify, and under our statute no inference can be drawn from, nor comment be made on, his failure to do so. But by consenting to take the stand, and swearing to tell the truth and the whole truth, he waives his constitutional privilege, and may be cross-examined in the same manner as any other witness. There is this difference, however, between an ordinary witness, and a defendant testifying in his own behalf: the former goes upon the stand by compulsion, the latter voluntarily. Having waived his constitutional privilege to keep silent, he cannot give testimony which makes in his favor, and then object to legitimate cross-examination, upon the ground that his answers will tend to criminate him." It is objected here that the district attorney, upon receiving the letter from the defendant, read it to him. No objection, however, was made to it at the time, and we cannot see that the defendant was specially injured thereby. The important question concerning the letter was the manner in

which it was signed and, whilst the fact in relation thereto bore hardly against the defendant, he has himself to blame for it, for in his examination in chief, he told but half the truth in regard to it and, under the circumstances of the case, it was as deceptive as if it had been an entire and absolute untruth. The court committed no error in directing the defendant to hand the letter to the district attorney, and as to the use made of it there was no objection at the time and there is no exception on the record.

The sixth assignment is contrary to our rule XIV. It embraces two distinct subjects, and for this reason is disregarded. What is complained of, however, is disposed of in the other assignments of error, which relate to the same subjects.

It is to be said also that, at the close of the case, after the defendant rested, in response to "The commonwealth offers in evidence the photograph of Elmer Frey; also letter," there was not a word of objection on the part of the defendant, nor is there any exception; but, as we have already stated, we are abundantly satisfied that the photograph was well identified and that the letter, the admission of which is complained of, was properly in the hands of the commonwealth for such use as was proper, because it was introduced by the defendant himself. For this reason, also, the seventh assignment of error is overruled.

The case was well tried. The rights of the defendant were not invaded nor in any way curtailed. The jury evidently believed the testimony of the commonwealth, and a conviction properly and necessarily followed.

Judgment affirmed and record remitted to the court below, in order that the sentence may be fully executed.